# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br>v.<br><br>MARCUS A. OWENS,<br><br>                         Defendant. | Case No. 16-CR-38-JPS<br><br><br><br><br>**ORDER** |

       On March 1, 2016, a grand jury sitting in the Eastern District of Wisconsin returned a two-count indictment against Marcus A. Owens. Indictment (Docket #9). Mr. Owens is charged with one count of knowingly receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and one count of knowingly possessing matter that contained images of child pornography, in violation of 18 U.S.C. § 2252A(a)(5). (Docket #9). This matter comes before the Court on Mr. Owens's motion to dismiss the indictment. (Docket #41).

       On September 8, 2016, Magistrate Judge David E. Jones issued a Report and Recommendation ("the Report") with this Court, recommending that the motion to dismiss the indictment be denied. (Docket #58). On October 17, 2016, Mr. Owens filed written objections to the findings pursuant to 28 U.S.C. § 636(b)(1)(C). (Docket #58). On October 31, 2016, the government filed a response to the objections, (Docket #73), and Mr. Owens did not file a reply. The objections to the Report are now fully briefed and ready for disposition. As discussed below, the Court will adopt the recommendation of Magistratee Jones and deny Mr. Owens's motion to dismiss the indictment.

1. **BACKGROUND**

This case arises out a large-scale FBI investigation into a child pornography website. For the purposes of this Order, the Court presumes the parties' familiarity with the background of this case.

In September 2014, FBI agents began investigating a website that appeared to be dedicated to the advertisement and distribution of child pornography. (Affidavit in Support of Application for NIT Warrant ("NIT Warrant Aff.") ¶ 11, Docket #39-2 at 5-37. The website, "Playpen"—referred to in the warrant applications as "Target Website" and "Website A" respectively—had more than 150,000 registered users and contained tens of thousands of posts related to child pornography. (NIT Warrant Aff. ¶¶ 10-13).

Playpen did not reside on the traditional or "open" internet. (NIT Warrant Aff. ¶ 10). Instead, Playpen operated only on the "Tor" network, an open-source software tool which routes communications through multiple computers called "nodes" in order to mask a user's IP address. Users have to download specific Tor software or utilize a Tor "gateway" to get onto the Tor network and then navigate to a site like Playpen. (NIT Warrant Aff. ¶ 7). This process is used to keep the website user's identity anonymous. (NIT Warrant Aff. ¶¶ 7-9).

**1.1 The Network Investigative Technique Warrant**

In February 2015, the FBI apprehended the administrator of Playpen and took control of the website. (NIT Warrant Aff. ¶ 30). Rather than shut down Playpen, however, the FBI operated the website from a government facility in the Eastern District of Virginia for close to two weeks in an effort

Page 2 of 12

Case 2:16-cr-00038-JPS   Filed 12/05/16   Page 2 of 12   Document 84

to identify website users. On February 20, 2015, an FBI special agent applied to a magistrate judge in the Eastern District of Virginia for a warrant to use a Network Investigative Technique ("NIT") to investigate Playpen's users and administrators. In support of the warrant application, the agent submitted a thirty-three-page affidavit that set forth his basis for probable cause to believe that deploying the NIT would uncover evidence and instrumentalities of certain child exploitation crimes. *(See generally* NIT Warrant Aff).

The NIT involved additional computer instructions that would be downloaded to a user's computer—referred to as an activating computer—along with the site's normal content. NIT Warrant Aff. ¶ 33. After downloading the additional instructions, the activating computer would transmit certain information to the government-controlled computer located in the Eastern District of Virginia, including: (1) the computer's actual IP address; (2) a unique identifier to distinguish the data from that of other computers; (3) the computer's operating system; (4) information about whether the NIT had already been delivered to the computer; (5) the computer's "Host Name"; (6) the computer's active operating system username; and (7) the computer's "Media Access Control" address. NIT Warrant Aff. ¶¶ 33-34, 36. The NIT would be deployed each time a user logged onto the government-controlled website. NIT Warrant Aff. ¶ 36.

On February 20, 2015, United States Magistrate Judge Theresa Carroll Buchanan, sitting in the Eastern District of Virginia, signed the NIT Warrant. (NIT Warrant, Docket #39-2 at 2-4). The face of the NIT Warrant authorized the government to search property located in the Eastern District of Virginia. (NIT Warrant at 2). Additionally, the NIT Warrant further described the

property to be searched in "Attachment A" to the warrant. (NIT Warrant at 2).

Attachment A of the NIT Warrant stated that the warrant "authorize[d] the use of [an NIT] to be deployed on the computer server described below, obtaining information described in Attachment B from the activating computers described below." (NIT Warrant at 3). It explained that the computer server, which was located at a government facility in the Eastern District of Virginia, was operating a Tor network child pornography website. Further, it stated that the activating computers were those of any user or administrator who logged into the child pornography website. (NIT Warrant, Docket #39-2 at 3).

Attachment B identified the property to be seized. It listed seven pieces of information to be seized "[f]rom any 'activating' computer": (1) the IP address, and the date and time the NIT determined the IP address; (2) a unique identifier generated by the NIT; (3) the type of operating system running on the computer; (4) information about whether the NIT had already been delivered to the activating computer; (5) the activating computer's Host Name; (6) the activating computer's active operating system username; and (7) the activating computer's media access control address. (NIT Warrant at 4).

Through the use of the NIT and additional investigation, FBI agents determined that an individual with the username "tinderbittles" registered an account on Playpen on February 3, 2015, and accessed the site for more than three hours between February 3 and March 4, 2015. (Residence Warrant Aff. ¶¶ 25-26, Docket #39-1). This user accessed several posts that contained links to and sample photos of child pornography. (Residence Warrant Aff.

Page 4 of 12

Case 2:16-cr-00038-JPS   Filed 12/05/16   Page 4 of 12   Document 84

¶¶ 27-31). Agents learned the user's IP address via the NIT, determined the service provider of the IP address, and linked the IP address to Mr. Owens at his home in Kenosha, Wisconsin. (Residence Warrant Aff. ¶¶ 25-34).

### 1.2 The Residential Warrant

With this information, an FBI agent subsequently applied for a warrant to search the Kenosha residence. In support of the warrant application, the agent submitted a thirty-four-page affidavit that set forth his basis for probable cause to believe that the residence contained evidence relating to federal violations concerning child pornography. (*See generally* Residence Warrant Aff., Docket #39-1 at 8-41). This affidavit recited much of the information contained in the NIT Warrant Affidavit. See Residence Warrant Aff. ¶¶ 7-21. United States Magistrate Judge Nancy Joseph signed the warrant on February 1, 2016. (Residence Warrant at 1, Docket #39-1).

Law enforcement officers executed the warrant on February 4, 2016, and seized—among other things—an external hard drive that contained numerous images and videos of suspected child pornography. (Criminal Complaint ¶ 5, Docket #1). Mr. Owens agreed to speak with law enforcement, and he admitted to accessing certain websites that contained images of child pornography. (Criminal Complaint ¶ 8). Based on the evidence seized from the residence and his statement to law enforcement, Mr. Owens was arrested pursuant to a criminal complaint that charged him with receiving and possessing child pornography. (*See* Criminal Complaint).

On March 1, 2016, a grand jury indicted Mr. Owens for one count of knowingly receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and one count of knowingly possessing matter that contained

images of child pornography, in violation of 18 U.S.C. § 2252A(a)(5). (Indictment, Docket #9).

**2.     LEGAL STANDARD**

Pursuant to 28 U.S.C. § 636(b)(1)(B), a magistrate judge may consider potentially dispositive motions, such as a motion to dismiss, and issue proposed recommendations to the district judge regarding the motion. When reviewing a magistrate's recommendation, the Court is obliged to analyze the portions of the report to which the defendant has lodged objections *de novo*. 28 U.S.C. § 636(b)(1)(C). Thus, the Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* In other words, the Court's *de novo* review of Magistrate Jones's Report is not limited to his legal analysis alone; rather, the Court may also review the factual findings and accept, reject, or modify those findings as it sees fit based upon the evidence. *Id.*

**3.     DISCUSSION**

Mr. Owens seeks an extraordinary remedy to dismiss the indictment arguing that the government's conduct in investigating the Playpen website "shocks the conscience" and was so "outrageous" that it violated his right to due process. (Docket #41). Mr. Owens argues that in operating the Playpen website during its investigation, the "government knowingly distribut[ed] at least a million images and videos of digital child pornography." (Docket #64 at 1). Mr. Owens maintains this investigation was "easily the most harmful sting operation in American history." (Docket #64 at 2).

In the alternative of dismissal, Mr. Owens requests an evidentiary hearing to determine the "true extent of the harm" caused by the Government's investigatory tactics. (Docket #41 at 23). The Report

Page 6 of 12

recommends denying an evidentiary hearing and denying the motion to dismiss the indictment because: (1) "there is no Supreme Court 'precedent' establishing that an indictment may be dismissed due to outrageous conduct"; (2) the Seventh Circuit has expressly rejected the outrageous government conduct defense; and (3) regardless, the government's conduct was not so outrageous that it violated Mr. Owens's right to due process. (Docket #58 at 8-9). Mr. Owens objects to this recommendation and argues that the Report erred when putting Seventh Circuit before Supreme Court precedent and that the government's actions certainly were so outrageous as to constitute a due process violation. (*See generally* Docket #64). As described below, although the Court does not entirely agree with the Report's reasoning, the Court nonetheless agrees with Judge Jones's conclusion that the motion to dismiss should be denied and that no evidentiary hearing is necessary.

### 3.1 Legal Framework For "Outrageous" Conduct Defense

Mr. Owens relies on two Supreme Court cases in support of his "outrageous" conduct defense: *Rochin v. California*, 342 U.S. 165 (1952), and *United States v. Russell*, 411 U.S. 423 (1973). In *Rochin*, three law enforcement officers illegally entered the defendant's residence based on information that he was selling narcotics. *Rochin*, 342 U.S. at 166. The officers forced their way into a bedroom where they observed the defendant sitting on a bed with his wife. *Id.* After the defendant grabbed two pills from a night stand and placed them in his mouth, the three officers jumped on him and tried to extract the pills. *Id.* When the officers' efforts proved unsuccessful, they arrested the defendant, took him to a hospital, and had his stomach pumped against his will. *Id.* The defendant's vomit contained two morphine pills, and he was

Page 7 of 12

Case 2:16-cr-00038-JPS    Filed 12/05/16    Page 7 of 12    Document 84

subsequently charged with and convicted of possessing a preparation of morphine. *Id.* On appeal, the Supreme Court reversed the defendant's conviction, finding that it was "obtained by methods that offend the Due Process Clause." *Id.* at 174. In reaching this decision, the Court stated that the officers' conduct "shock[ed] the conscience." *Id.* at 172.

In *Russell*, an undercover investigation resulted in the defendant being charged with unlawfully manufacturing and selling methamphetamine. 411 U.S. at 424. At trial, the defendant claimed entrapment because an undercover DEA agent supplied him with an essential ingredient used to make the drug. He was convicted, but the Court of Appeals for the Ninth Circuit reversed the conviction because "an undercover agent supplied an essential chemical for manufacturing the methamphetamine which formed the basis of [the defendant's] conviction." *Id.* The Supreme Court reversed the Ninth Circuit's judgment and affirmed the defendant's conviction. *Id.* at 436. The Court determined that there was no entrapment because the defendant was predisposed to manufacture the drug. *Id.* at 430-36. The Court noted, however, that it "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.* at 432 (citing *Rochin*, 342 U.S. 165).

Despite *Rochin* and *Russell,* the Seventh Circuit has never recognized the outrageous conduct defense. *See, e.g., United States v. Smith*, 792 F.3d 760, 765 (7th Cir. 7 2015) (noting that the Seventh Circuit does not recognize an "outrageous government conduct" defense); *United States v. Westmoreland*, 712 F.3d 1066, 1071 (7th Cir. 2013) (noting that, absent real guidance from the

Supreme Court, the Seventh Circuit "has disallowed such a defense"); *United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011) ("Outrageous government conduct is not a defense in this circuit."); *United States v. White*, 519 F.3d 342, 346 (7th Cir. 2008) ("[T]his circuit clearly and consistently has refused to recognize any defense based on...'outrageous government conduct.'"); *United States v. Childs*, 447 F.3d 541, 545 (7th Cir. 2006) (noting that, while the Supreme Court "has left open the possibility of" granting such relief, the Seventh Circuit has never taken the "extreme step of dismissing criminal charges against a defendant because of government misconduct"); *United States v. Garcia*, 89 F.3d 362, 367 (7th Cir. 1996) (noting that the Seventh Circuit "has expressly refused to recognize the doctrine of 'outrageous governmental conduct.'"); *United States v. Boyd*, 55 F.3d 239, 241 (7th Cir. 1995) (holding that the doctrine of "outrageous government misconduct...does not exist in this circuit").

**3.2  Analysis**

The Court recognizes that some tension exists between the Seventh Circuit cases suggesting the outrageous conduct defense does not exist, period, and the pre-existing Supreme Court precedent. Neither *Rochin* nor *Russel* have been overruled, and are therefore still good law today.

Although the Report discusses *Rochin* initially, it makes no mention of the case in its analysis. Mr. Owens takes great issue with this, and, citing *Rochin*, argues that the Report erred in stating that no Supreme Court precedent has ever dismissed an indictment due to outrageous government misconduct. (Docket #64 at 8). In doing so, Mr. Owens maintains that the Report incorrectly put Seventh Circuit precedent over the Supreme Court's jurisprudence in *Rochin*. The Court agrees with Mr. Owens's objection that

the Report overlooked the *Rochin* holding in its analysis; this conclusion, however, makes no difference to the Court's ultimate finding that no due process violation occurred in this instance. The Court's discussion of whether it can apply the "shocks the conscience" due process defense in this case is essentially an academic question; regardless, the Court does not find the government's conduct in this case to be so outrageous to constitute a due process violation.

Mr. Owens's objection to the Report relies heavily on *Rochin,* where the Supreme Court dismissed an indictment due to outrageous government misconduct. However, the Court finds *Rochin* to be distinguishable from the facts of this case and not applicable here. In *Rochin*, the outrageous government misconduct was targeted *directly at the defendant*—the officers forcefully attempted to extract pills out of the defendant's mouth and then forced his stomach to be pumped against his will. 342 U.S. at 166. Moreover, although *Rochin* is still technically good law, the Supreme Court has more recently indicated that its analysis of the case would be different today.

In *City of Sacramento v. Lewis*, 523 U.S. 833 (1998), the Court, without explicitly overruling *Rochin,* explained that the case would have been decided differently today due to more recent developments in Fourth Amendment jurisprudence. *Id.* at 850 n.9 ("*Rochin*, of course, was decided long before *Graham v. Connor* (and *Mapp v. Ohio* [citation] and today would be treated under the Fourth Amendment, albeit with the same result."). In light of the Court's discussion in *Lewis,* it is unclear when, if ever, the Supreme Court would find government conduct so outrageous as to constitute a due process violation that requires dismissal of an indictment.

Without further guidance from the Supreme Court or the Seventh Circuit, this Court is unwilling to find that the government's actions in this case were so outrageous as to justify dismissing the indictment against Mr. Owens. The government did not create the Playpen website, and more importantly did not coerce Mr. Owens into receiving and possessing child pornography. The undisputed facts show that Mr. Owens willingly joined Playpen several weeks prior to the FBI's allegedly outrageous conduct Finally, unlike *Rochin,* Mr. Owens is being prosecuted only based on evidence that was found in his residence during a search; the government's conduct in maintaining the Playpen website is far attenuated from the evidence used to prosecute Mr. Owens. As such, the Court does not find the government's actions constitute a due process violation sufficient to require dismissal of the indictment.

On a final note, the Court wishes to make clear that it takes no position on the propriety of the government's actions in operating the Playpen website during the course of this investigation. On the one hand, Mr. Owens's motion certainly makes persuasive arguments that the government caused additional harm by facilitating the uploading and redistribution of "at least a million" child pornography images. On the other hand, the Court does not purport to fully understand the complexity of child pornography investigations in today's technology filled world and does not lightly second guess the investigatory techniques of trained experts. Whether the government *should* have operated the Playpen website in the manner it did is an entirely different question that is not before the Court today. The Court is confident, however, that the government's actions in this matter were not so outrageous as to justify the dismissal of the indictment against Mr. Owens.

## 4. CONCLUSION

In sum, the Court agrees with the recommendation of Magistrate Jones and finds that the government's actions in this case do not warrant dismissal or other sanctions. Additionally, the Court agrees with the report that no evidentiary hearing is required because Mr. Owens is not entitled to the relief he seeks irrespective of any purported factual disputes between the parties. Thus, the Court will adopt the recommendation in full and deny Mr. Owens's motion to dismiss the indictment.

Accordingly,

**IT IS ORDERED** that Magistrate Judge David E. Jones's report and recommendation (Docket #58) be and the same is hereby **ADOPTED**;

**IT IS FURTHER ORDERED** that, consistent with the Court's adoption of the report and recommendation, Mr. Owens's motion to dismiss the indictment (Docket #41) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 5th day of December, 2016.

BY THE COURT:

s/ *J. P. Stadtmueller*
J.P. Stadtmueller
U.S. District Judge